Cases number 21-2993, Southern Iowa, United States v. Tu Anh Nguyen. Case number 21-2994, Southern Iowa, United States v. Yu Minh Le. Case number 21-2995, Southern Iowa, United States v. Son Bin Tran. All right, very well. Mr. Thomas, we'll hear from you first. Good morning, and may it please the court. My name is George Thomas, and I represent Mr. Tran and Mr. Nguyen in this case. This case centered around a traffic stop that began with the suspicion of some window tint, and the stop occurred under the purview of the North American Standard Inspection Program, where Trooper Haas conducted a level two search of the vehicle that Mr. Tran and Nguyen were occupying. A level two search, unlike a level one search, is considered to be a walk-around search, where Trooper Haas inspects the vehicle for various safety measures, and other things such as bills of lading and logbooks. During his walk-around search, his level two inspection, Trooper Haas identified a few concerns. He identified concerns regarding a logbook, what he considered to be insufficient bills of lading, and a faulty security hatch on the trailer of the vehicle. Trooper Haas during the motion to suppress hearing that particularly the safety hatch was identified and could have been fixed within a relatively short amount of time during the search. Trooper Haas then continued to ask Mr. Tran if he had a fire extinguisher, and whether or not he had the requisite, I think they're like orange safety cones, in the vehicle, which Mr. Tran promptly provided. Our contention is though that once Trooper Haas began opening the containers inside of the vehicle, he exceeded the scope of his level two inspection. This court in U.S. Night has stated that the scope of the search, the reason it in the first place that it's allowed under the Fourth Amendment, under the regulatory scheme, is because the search is limited in time, place, and scope. And when Trooper Haas decided to go and open up the of the trailer, he exceeded that scope because there was no reasonable expectation that anything within the scope of his level two search would have been found inside of these cardboard boxes. This is unlike... Can I ask you a fact question? I thought from the summary judgment order in the that raised Trooper Haas's suspicion is that these valuable items on the bill of lading would be in boxes and weren't even closed. Am I wrong about that? No, Judge, you are correct about that. In fact, it's... He wasn't opening the boxes, he's just observing boxes that were already opened? In part, until the... And then once the dog... First, he smelled an odor of bleach inside of the vehicle and he soon thereafter, I think the dog's name is Olaf, the K-9 unit did a free air sniff and made two passes around the vehicle before identifying or providing an indication outside of the vehicle. Then he began opening boxes inside of the trailer. I think most notably the... Can't he do that once the dog alerts and provides probable cause? Well, it's our contention that there was no probable cause, one, for the dog to initiate the search in the first place or the free air sniff test in the first place. And then secondly, the... It's... Trooper Haas didn't even inspect... If we look at the totality of the circumstances, it seems that Trooper Haas just didn't inspect the outside of the vehicle underneath, anywhere where the dog initially indicated a smell. Rather, he went directly into the cardboard boxes in places where the level two search, any violations of a level two search just could not be found. I mean, ultimately also, the level two search could have ended very quickly. I mean, Trooper Haas acknowledged that after the bills of lading, the DOT number, window tints, the logbook, these concerns he had, the safety hatch, he acknowledged that the safety hatch could have been fixed on the spot and would have concluded the level two search at that moment. So we believe that once he began entering the trailer for the purpose of searching within the containers that would not be subject otherwise to a level two search, he exceeded the scope of his regulatory search. And as such, the search was unlawful. And I... Unless the court has any further questions, I will pass it on to Mr. Sirianni and reserve the rest of my time for rebuttal. All right. We typically just hear one lawyer in rebuttal. Have you worked that out with Mr. Sirianni? Are you going to be doing a rebuttal only or is that not set up? I can certainly do the rebuttal during our practice conference. The clerk asked for us both to reserve time for rebuttal. I see. All right. Well, maybe we'll allow it if you were under that impression from the clerk. We'll see. Thank you for your argument. Mr. Sirianni, we'll hear from you. Yes, your honors. Good morning. May it please the court. Attorney Robert Sirianni appearing on behalf of Mr. Lee. To follow up with co-counsel Thomas suggested and argued the stop in this case and the search of the vehicle was clearly premeditated. The main points of our brief that I'd like to argue are under the case of Indianapolis versus Edmonds and United States against Knight. The United States against Knight case is an Eighth Circuit case. Clearly when Officer Haas had approached the vehicle and stopped it, all the evidence that was contained within the vehicle should be precluded from entering a court of law and it should be discarded. The purpose of the stop and the search in this case was for program which is really a civil in nature, not criminal. The stop was premeditated, the search was premeditated and to follow up on what your honor suggested in one of the questions, he does not have permission to open the containers. The dog in this case, Olaf, only indicated a search or alert to outside the vehicle. Nothing inside the vehicle. In fact, the alert was in between the truck and the trailer position. The reason why this is significant is because that does not give Officer Haas or Trooper Haas, excuse me, permission to start opening cases. He opened one case or container and found a vase with popcorn. He noticed that that was somewhat suspicious or somewhat odd. But again, it doesn't rise to the level of probable cause or reasonable suspicion even to conduct further searches of containers with inside the trailer. Next, he noticed that some of the items were not secure. But again, there's nothing to indicate he saw drugs or noticed anything. Our main position in the brief is that when Trooper Haas approached this vehicle, he dispelled bleach. However, when he called the inspection dog Olaf to the scene with Officer Baldra, the dog was not a dog that could sniff hazardous materials. This dog was purposely trained for sniffing narcotics. So if Trooper Haas is supposed to conduct a level two inspection, why does he have a drug dog there? Well, he has a drug dog there because he is premeditated designed to stop Mr. Han, Mr. Tran, and stop the vehicle and search the vehicle because he is exceeding the authority of his level two programming and exceeding the level of what he is supposed to be doing under the civil guidelines for commercial vehicle inspections. He calls this drug dog over. Again, there's no drugs apparent. There's no weapons apparent. There's nothing to indicate that these people are transporting narcotics, except for some odd bills of lading that again have nothing to do with drug control or drug measures. When he opens the vehicle and starts searching, the dog did not indicate any scent with inside the vehicle, did not indicate anything with inside the boxes. Therefore, under the level two programming, which says that Trooper Haas can only walk around the vehicle, he can't go in and start searching inside cases or inside containers. The night case, which is an eighth circuit case, adds to our point that anything searching inside a container, inside a briefcase, or inside a box would be unconstitutional and search is being conducted. Again, even under the level two guidelines that were announced in the motions of the press, Trooper Haas came and looked under the vehicle. He came and looked underneath. So, he has no authority whatsoever under a level two program to start searching inside boxes. What do you think the dog was alerting to, if not to something inside the truck? That's a good point. Well, based on what I could imagine in my head. Then, why don't you lose? I mean, if it's a good point, then the dog was alerting to something inside the truck and there was probable cause to search the boxes. Yes. So, what the dog alerted to, the testimony, is the dog alerted to a seam and the dog alerted to a seam, which was in between the truck and the trailer. That was the testimony from the motions of the press. When asked on direct examination, both Officer Trooper Haas and the dog did not alert to anything inside the vehicle. It was only outside the vehicle. And that was made on cross-examination of both officers. I mean, if the dog's being taken around the outside of the vehicle, how could it alert to anything but outside the vehicle? He's not inside the vehicle. Wait, okay. I don't understand the argument. The argument was, was the door to the vehicle open so that the dog could go in? I mean, I don't know. I guess, I mean, I don't understand the argument. Okay, well, that's a good point. So, let's, let's just hypothetically say the dog alerts to something outside the vehicle. Well, the officers, guess what they should have done? They should have taken that dog inside the, inside the trailer and allowed them to switch boxes. When the officer, the officers inspected the trailer, once the dog alerted, they didn't see anything. There was nothing available. They didn't see any drugs. They didn't see anything readily available. They didn't see any bleach. They didn't see any narcotics. All they saw were closed up boxes. They opened one box and found a vase. Well, that should end of the matter right there. They should have stopped right there. Once they found a vase or once they found an empty box, that gives them no probable cause to go forward. They have no authority to do that. They should have stopped right there. They have no authority to go after they find two, two pieces of evidence have nothing to do with narcotics. As a matter of fact, what they should have done was at that point, put the dog inside the vehicle and maybe done an inspection there, but they didn't do that. The dog never alerted to any container whatsoever inside the vehicle. According to the testimony, the testimony was that the dog only alerted to outside the car. And I understand your position as well. Isn't it logical to say, well, the dog could be, you know, the dog is logically sniffing inside the car, inside the container. No, the officers looked inside the trailer, found nothing. If the dog, if we're assuming that we're assuming too much, or we're assuming that the dog is, you know, sniffing something inside a container, we can't assume that for purposes of the fourth amendment. The dog didn't do that. The officers never indicated the dog sniffed a container ever. And I don't think it's fair for us to put that on Mr. Tran or Mr. Lee or the defendants to say, hey, just because this dog and these officers didn't do their job, we're going to allow these officers to go forward and start inspecting containers, which they have no business inspecting the first place. So I think the fourth amendment stops them. I think the regulatory team stops them. They have no, nothing under the compliance measures of that level two scheme to go inside containers. The Knight case supports our position on that. The Indianapolis versus Edmonds case, I think suggests that anything beyond the scope of a level two can't be for crime control purposes. Again, if Trooper Haas is worried about bleach, guess what? He should have summoned a dog that could smell hazardous materials. He didn't do narcotics. This whole purpose of the stop and the seizure was designed for criminal searches and a crime control purposes beyond regulatory scheme. And with that, I'd like to rest your honor, because I do want to have, I'm going to have Mr. Thomas do the rebuttal. I trust him enough to do that. I have nothing further to add and I'm comfortable with Mr. Thomas just doing the rebuttal. Okay. Well, your time has expired anyway, so let's do it that way. Mr. Thomas, we'll hear from him in rebuttal. But first we'll hear from the government. So Ms. Sudman, you may proceed. Thank you, your honors. Good morning. May it please the court. My name is Shelley Sudman and I represent the United States for the Southern District of Iowa. Up to this point, we've been extensively talking about the traffic stop and the motion to suppress. The government would submit that Trooper Haas did have a valid reason to stop the vehicle based on window type tint and the fact that he believed it was operating commercially based on a commercial motor vehicle sticker. He did initiate a level two search and told the two occupants from the beginning, once he ascertained by asking them if they were in fact operating commercially, which they did acknowledge they were operating. So he asked them for log book and bills of lading. They did not have a log book. They did have some bills of lading. They started to go through the bills of lading. They then continued the level two search by checking the vehicle weight, the lights, the tires. He did notice once he got to the back of the car that the breakaway chain was not attached appropriately. He talked to the appellant Tron about that. And at that point, he smelled bleach between the truck and the trailer, asked Tron about that. He then asked to see the safety equipment, which was inside the trailer. And so Mr. Tron opened the trailer so that the safety equipment could be ascertained. When they got to the walking to the started to walk inside the trailer, Trooper Hawes again smelled bleach, asked Mr. Tron about it. Mr. Tron then got out the fire extinguisher. Trooper Hawes saw some open boxes, two large open boxes, and asked what was in there. And he said vases. Mr. Appellant Tron said vases. He again smelled bleach, asked Tron about it. Tron said, we don't have any bleach in here. It must be coming from outside. He was asked some questions about the vase because on the bills of lading, the vases were very expensive. Because the vases weren't restrained in any fashion, they didn't have a lid on them. They weren't restrained in the boxes. He took note of that and then took him back to the cruiser where he tried to continue to ascertain information about the company, the bills of lading, whether or not they had a DOT number, if he could find the company. So Trooper Hawes throughout the first 30 minutes of this traffic stop is trying to find every reasonable assertion that this company is operating legitimately and just trying to check. He calls Sergeant Kilpack, who was an instructor for the North American Standards, asked him to help him find this company. And when he's looking at these bills of lading, he's trying to determine what's on the vehicle. And at that time, he just starts seeing things that are very inconsistent with the six years that he's been operating as a conducts these inspections and does call Officer Boulder to see if he's en route, which is a canine, which is an officer that has a certified canine. And the officer arrives while the level two inspection is occurring. And then during that time frame, again, Trooper Hawes is unable to find a business. The bills of lading don't make sense, as originally Tron had said that all the items on the bills of lading were in the vehicle. And then once they're going through them, numerous items haven't been picked up. And then when he finds out that they are going to Chicago and they're going to drop the trailer off and then go home to Texas, there's still these vases that are very inconsistent with the East Coast. So again, these are just inconsistencies that continue to not make sense with normal commercial motor vehicle standards. And so then when Boulder gets out to run the dog, they get the passenger out. They locate the firearm. So that's taken care of. Then Officer Boulder runs his dog. The dog alerts and indicates. The dog is certified. They are a certified team and there was nothing in the motion to suppress or the trial that challenged the certification of Officer Boulder or K-9 Olaf. And then once K-9 Olaf did alert and indicate to as prescribed and trained, they did conduct a search of the trailer, which uncovered marijuana and THC vape cartridges. And so the argument that the defense is or appellants making about not having probable cause, it's well settled law that a trained and certified K-9 can provide probable cause. The assertion that you could put the K-9 inside the vehicle, it's also very common for these kinds of these stops to happen where the K-9 goes around the perimeter of the vehicle to establish probable cause for the officers to search the vehicle if the K-9 does alert and indicate and is properly trained and certified, which is the case in this. And the K-9 certification and alert and indication does provide probable cause to search an entire vehicle under United States v. Murillo-Segato. The indication that this was anything other than a situation that started off as a Level 2 inspection, there's no evidence of that. In review of the video, Trooper Hawes tries very hard to obtain information to determine that this is a legitimate business and that they're just new, but there's just one thing after another that continues to defy that logic. And that's exactly what the District Court determined after listening to the testimony of Trooper Hawes and Officer Boldreau and Sergeant Kilpack. And so for those reasons, if the courts don't have any questions, the government would rest on that and just ask the courts to determine that the District Court did not err in denying the motion to suppress or the defendant's motion for acquittal. Thank you for your time. I just have one brief question. I think I recall right, it was Mr. Lee who was not present at the stop, is that right? Correct. Mr. Lee was not present at the stop. He was the business owner. He had the business license, the truck, the trailer. Could you briefly just tell me why the evidence is sufficient with respect to him? For the conspiracy charge? Yes. So, based on the investigation, the evidence, the investigation determined that Mr. Lee owned the truck. Mr. Lee owned the trailer. He had the business license. He had insurance on this business for himself, Tron, and Wynn. Mr. Tron said that he went to, they drove to Washington to Mr. Lee's house. They backed up that trailer and they loaded the trailer that Mr. Lee had there into the trailer that Tron and Wynn then end up traveling. Mr. Tron said that Mr. Lee was in constant communication with those two while they were on the trip, that he provided all the financial part of it, that he wanted to be notified when they made their drops. And also, Mr. Lee was on the traffic stop in Mississippi prior to in November, one month before, where $108,000 were located as well as a large amount of THC vape cartridges. And then in March, he was also part of the traffic stop that happened in Lincoln, Nebraska with another truck and trailer owned by Mr. Lee in which there were empty boxes and $15,000 in a vape cartridge found, which were that was happening over, at least between November and November of 2019 to March of 2020, involving this extra elbow grease business, which they were never able to find as a business that you could call up and hire them to transport your loads and reformation, along with just the the downtime, the inefficiency of the whole load, having this truck and trailer in Texas, while Lee lives in Washington. So Lee's paying for at least $800 or more a month, can't remember exact amount, for this truck and trailer to be sitting in Texas while he lives in It's just not consistent with the normal commercial motor vehicle standards, according to Sergeant Kilpack, according to Trooper Hawes, and then the numerous stops that have money and drugs on them. All right, thank you for your argument. Mr. Thomas, we hear from you in rebuttal. Thank you, Your Honor. Briefly, I would like to just address that we don't contend that Trooper Hawes was not allowed to go into the trailer. Rather, the contention is, and as supported under, or in U.S. v. Knight, that he was limited to searching the trailer in a manner that would expose the types of violations that are typically found in a Level 2 search. Second, all of the violations that the government questionable business practices. They may be unsafe. All of these violations may require possibly civil fines or something, but even the smell of bleach doesn't give rise to a search. I mean, there's, I think, a stark difference between having the presence of a air freshener and a cleaning agent, like bleach, in terms of giving rise to cause. And then lastly, to address Mr. Lee's connection with Mr. Tran Nguyen, I'd just like to briefly point out that although they were in constant communication, there was never any controlled buys, any wire taps. There was no evidence that their communication was criminal in nature. They're culture, and for that reason, the government failed to prove the conspiracy beyond a reasonable doubt. And that concludes my time, and I thank the panel for their time this morning. All right, very well. Thank you to all counsel. The case is submitted.